UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHERRY L. PEASLEE,                    )    No. 04-CV-0460-AAM
                                      )
          Plaintiff,                  )    ORDER DENYING PLAINTIFF'S
                                      )    MOTION FOR SUMMARY JUDGMENT
v.                                    )    AND GRANTING DEFENDANT'S
                                      )    MOTION FOR SUMMARY JUDGMENT
STANDARD INSURANCE COMPANY,           )
                                      )
          Defendant.                  )
                                      )

     BEFORE THE COURT are cross-motions for Summary Judgment. (Ct.
Rec. 10, 16 ).   This matter was heard with oral argument on October
21, 2005, in Yakima, Washington.    After reviewing the file,
administrative record and briefs filed by the parties, the court
**DENIES** Plaintiff's motion for summary judgment and **GRANTS**
Defendant's motion for summary judgment.

                         **I.   JURISDICTION**

     On September 18, 2003, Sherry L. Peaslee (Plaintiff) applied
for disability benefits through her employer, Spokane Cardiology,
where she worked as a staff nurse from August 2000 until September
19, 2003.  (AR 103-05.)  Defendant Standard Insurance Company
provided long term disability (LTD)insurance for Spokane
Cardiology.  The LTD plan is subject to the Employee Retirement
Insurance Securities Act of 1974 (ERISA), 29 U.S.C. 1001 *et seq*.
Plaintiff alleged disability due to fibromyalgia, rheumatoid

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

arthritis and chronic fatigue syndrome, with an onset date of August 7, 2003.  Defendant denied Plaintiff's claim on December 17, 2003, and again on review.  The instant matter is before this court pursuant to 29 U.S.C. § 1132(a)and(e).

## II.  BACKGROUND

In its initial denial of benefits, Defendant accepted that Plaintiff had fibromyalgia, but found no medical evidence to support a finding of inflammatory arthritis or chronic fatigue syndrome.  (AR 211-18.)  Defendant concurred with medical opinions that Plaintiff could perform sedentary to "light" work, but concluded she was not disabled as to her "own occupation," as defined by the LTD plan.  (AR 216-17.)  Plaintiff formally appealed the denial in May 2004, protesting that she was hired as a Licensed Practical Nurse (LPN), which under the *Dictionary of Occupational Titles (DICOT)* definition, requires "medium" level work; therefore, she asserts, she is disabled as to her "own occupation."   The entire file was reviewed by a vocational case manager, Kathy McCarthy, who compared the employer job description with job titles in the *DICOT*.  On May 24, 2004, Defendant affirmed the denial of benefits, explaining that while the LPN job title is classified in *DICOT* as a "medium" level job, the *DICOT* definition of Office Nurse, a "light" level job, more accurately reflected Plaintiff's essential tasks and requirements.  (AR 253, 255-56.)

In response to this denial, Plaintiff submitted a report from her own vocational expert (the Johnson Report) on June 1, 2004. (AR 270-80.)  Mr. Johnson stated that "usually in a doctor's office or clinic situation [LPN jobs] are rated at a physical capacity of light" but opined that Plaintiff's *specific* job

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

required medium to heavy tasks.  (AR 273.)  His conclusion appears
to be based on Plaintiff's self-reported job description, not the
one provided by Spokane Cardiology.  (AR 266.)  Although he is not
a medical professional, Mr. Johnson opined that Plaintiff lacked
the capacity to perform sedentary, light, medium or heavy work.
(AR 272.)[1]

Ms. McCarthy reviewed the Johnson Report, but did not change
her position that Plaintiff's "own occupation" was "light".  (AR
286.)  As part of further review, Defendant hired an independent
labor market analysis company in June 2004 to assess the typical
physical demands of a LPN hired for work in an office similar to
Spokane Cardiology.  (AR 305.)   Rainier Case Management, Inc.
conducted the labor market research by reviewing job analyses from
doctors' offices in the Spokane area, *DICOT* definitions of Office
Nurse and LPN, and the Spokane Cardiology job description.  It
concluded that Plaintiff's occupation was most properly classified
as Office Nurse and the work is generally "light."  (AR 305.)
After receiving the Rainier report, Defendant sent the claim to
its Quality Assurance Unit, where an independent physician
consultant reviewed Plaintiff's file again.  (AR 322-326.)  In
August 2004, the physician consultant concurred with the
fibromyalgia diagnosis, opined that it was not unusually severe,
and concluded that Plaintiff could work in her own occupation,

---

[1]    The court also notes that Plaintiff submitted letters from her
treating physician, Daniel Stoop, M.D., who opined Plaintiff was totally
disabled.  (AR 157, 250.)  This opinion apparently was given no special
consideration or deferential weight.  Although this causes the court concern
about Defendant's ultimate determination that Plaintiff was not disabled, it
recognizes that the U.S. Supreme Court has held that the "treating physician"
rule applied in Social Security cases does not apply in ERISA cases.  For this
reason, Defendant was not required to give deference to Dr. Stoop's opinion or
provide specific and legitimate reasons for rejecting his opinion.  *Black v.
Decker*, 583 U.S. 822, 834, 123 S.Ct. 1965 (2003).

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 3

assuming it is not above a "light" level.  (AR 322-28.)

      After reviewing the file and new reports, Defendant sent
Plaintiff a nine page letter on August 10, 2004, explaining in
detail why the denial was upheld, and that administrative remedies
were exhausted.  (AR 342-49.)  This appeal followed.

### III.    STANDARD OF REVIEW

      Federal common law governs the interpretation of ERISA-
governed insurance policies.  *Padfield v. AIG Life Ins. Co.*, 290
F.3d 1121, 1125 (9th Cir. 2002) (*citing Firestone Tire and Rubber
Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948 (1989)).  A denial
of benefits under an ERISA-governed plan that confers upon a plan
administrator "discretionary authority to determine eligibility
for benefits or to construe the terms of the plan," is reviewed by
the court for an "abuse of discretion." *Firestone,* 489 U.S. at
115;  *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 943 (9th Cir.
1999).  Where, as here, "a plan administrator is responsible for
both funding and paying claims," a conflict of interest exists
that could invoke a heightened *de novo* review. *McDaniel v. Chevron
Corp.*, 203 F. 3d 1099, 1108 (9th Cir. 2000).  This "apparent"
conflict of interest does not affect the standard of review,
however, unless the court determines that a "serious" conflict of
interest actually exists.  *Id.* at n6.  The beneficiary has the
burden to come forward with material and probative evidence to
establish that the plan administrator's self interest caused a
breach of its fiduciary obligation to the beneficiary.  The plan
administrator's obvious financial interest in keeping the money,
alone, does not establish a serious conflict of interest. *Jordan
v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

1  (9th Cir. 2004) (*citing Bendixen*, 185 F.3d at 943).

2      Here, Defendant clearly is given the discretion to determine
3  eligibility.  (AR 64.)  The parties agree that the standard of
4  review is "abuse of discretion." (Ct. Rec. 12, p. 14; Ct. Rec. 19,
5  p. 7).   The Ninth Circuit also refers to this deferential
6  standard of review as "arbitrary and capricious;" it is understood
7  to be a "distinction without a difference."  *Taft v. Equitable*
8  *Life Assur. Soc.*, 9 F. 3d 1469, 1471 n2 (9th Cir. 1993).  Where a
9  decision to grant or deny benefits is reviewed under this
10 standard, a motion for summary judgment is "merely the conduit to
11 bring the legal question before the district court and the usual
12 tests of summary judgment, such as whether a genuine dispute of
13 material fact exists, do not apply." *Bendixen*, 185 F.3d at 942.

14     Plan administrators abuse their discretion if they make a
15 decision without any explanation, construe provisions of the plan
16 in a way that conflicts with the plain language of the plan, fail
17 to develop facts necessary to make the determination, or base the
18 decision on an erroneous view of the law and/or "clearly
19 erroneous" findings of facts.  *Schikore v. Bankamerica*
20 *Supplemental Retirement*, 269 F.3d 956, 960-61 (9th Cir. 2001)
21 (citations omitted); *Taft*, 9 F.3d at 1472-73.  However, in the
22 ERISA context, decisions contrary to evidence in the record are
23 not necessarily an abuse of discretion.  *Taft,* 9 F.3d at 1473.  A
24 plan administrator does not abuse its discretion simply because
25 there is evidence before it that would support an opposite
26 decision.  *Id.* at 1474 (*citing Sandoval v. Aetna Life & Casualty*
27 *Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992)).  "Abuse of
28 discretion" means the entire record leads to the firm conviction

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

that a mistake has been made by the plan administrator. *Boyd v. Bert Bell/Pete Rozell NFL Players Retirement Plan*, 410 F. 3d 1173, 1179 (9th Cir. 2005). The court should defer to the plan administrator's decision if the record shows it is based on a reasonable interpretation of the plan's terms and was made in good faith. *Jordan*, 370 F.3d at 879.

**IV. ISSUES**

Plaintiff asserts Defendant's denial of her claim was an abuse of discretion because its interpretation of the plan conflicts with the plain language of the plan. She argues that Defendant's determination that her "own occupation" is that of an Office Nurse, and not a LPN, was arbitrary and capricious. (Ct. Rec. 19, p. 7; Ct. Rec. 26, p. 10). Defendant counters that even though Plaintiff is certified as a LPN, there is ample evidence to support its decision that her "own occupation" as defined by the LTD plan is that of Office Nurse. Defendant asserts that under the deferential abuse of discretion standard, its denial of benefits must be upheld. (Ct. Rec. 28, p. 4-5).

**V. DISCUSSION**

A. <u>LTD Plan Provisions.</u>

The March 1, 1997, LTD plan amendment provides for Allocation of Authority that gives Defendant the "exclusive authority . . . to interpret the Group Policy and resolve all questions arising in the . . . interpretation and application of the Group Policy." (AR 64.) The plan administrator has the right to:

i)  resolve all matters when a review has been requested;

ii) establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

iii) determine eligibility for insurance, entitlement to
benefits, the amount of benefits payable, the sufficiency and
amount of information reasonably required to make these
determinations. (*Id.* at 64.)

To receive LTD for the first 24 months, a member must be
disabled only from her "own occupation." After 24 months, she has
to be disabled from all occupations. (AR 45.) The LTD plan
defines "own occupation" and "material duties" as follows:

> OWN OCCUPATION means any employment business, trade,
> profession, calling or vocation that involves MATERIAL
> DUTIES of the same general character as your regular and
> ordinary employment with your Employer. Own Occupation
> is not limited to your job with your Employer.
>
> MATERIAL DUTIES means the essential tasks, functions and
> operations, and the skills, abilities, knowledge,
> training and experience, generally required by employers
> from those engaged in a particular occupation.

(*Id.* at 214.)

B.   Plan Administrator's Interpretation of LTD Provisions.

The court recognizes that Defendant, who has a financial
interest in not paying out benefits, coupled with discretionary
authority to decide whether a claimant should receive benefits,
has an inherent and clear conflict of interest. The law is clear,
however, that Plaintiff has the burden of coming forth with
probative evidence to show that Defendant has breached its
fiduciary obligations. *Jordan*, 370 F.3d at 875. She has not done
so; further, as discussed above, Plaintiff does not dispute that
Defendant has the authority to interpret the LTD plan and
determine eligibility. (Ct. Rec. 19, 27). Defendant reviewed the
employer's job description and determined that the "material
duties" of Plaintiff's job most closely resembled those of Office

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

Nurse, as defined by *DICOT*. [2]  (Ct. Rec. 24-1, p. 10).   In response to Plaintiff's contention that since she is a LPN, the LPN *DICOT* job description should be used to define her "own occupation," Defendant asserts that the LPN designation is a certification requirement of the job, not a description of the job.  Furthermore, the Spokane Cardiology job description does not include the majority of duties listed in the *DICOT* for LPN. [3]  (AR 24-1, p. 7.)  Specifically, the *DICOT* definition of LPN

---

[2]  **075.374-014 NURSE, OFFICE (medical ser.)**

Cares for and treats patients in medical office, as directed by physician: Prepares patient for and assists with examinations. Administers injections and medications, dresses wounds and incisions, interprets physician's instructions to patients, assists with emergency and minor surgery, and performs related tasks as directed. Maintains records of vital statistics and other pertinent data of patient. Cleans and sterilizes instruments and equipment, and maintains stock of supplies. May conduct specified laboratory tests. May record and develop electrocardiograms. May act as receptionist, perform secretarial duties, and prepare monthly statements. *GOE: 10.02.01 STRENGTH: L GED: R5 M3 L5 SVP: 7 DLU: 89*

[3]  **079.374-014 NURSE, LICENSED PRACTICAL (medical ser.)**
Provides prescribed medical treatment and personal care services to ill, injured, convalescent, and handicapped persons in such settings as hospitals, clinics, private homes, schools, sanitariums, and similar institutions: Takes and records patients' vital signs. Dresses wounds, gives enemas, douches, alcohol rubs, and massages.  Applies compresses, ice bags, and hot water bottles. Observes patients and reports adverse reactions to medication or treatment to medical personnel in charge. Administers specified medication, orally or by subcutaneous or intermuscular injection, and notes time and amount on patients' charts. Assembles and uses such equipment as catheters, tracheotomy tubes, and oxygen suppliers. Collects samples, such as urine, blood, and sputum, from patients for testing and performs routine laboratory tests on samples. Sterilizes equipment and supplies, using germicides, sterilizer, or autoclave. Prepares or examines food trays for prescribed diet and feeds patients. Records food and fluid intake and output. Bathes, dresses, and assists patients in walking and turning. Cleans rooms, makes beds, and answers patients' calls. Washes and dresses bodies of deceased persons. Must pass state board examination and be licensed. May assist in delivery, care, and feeding of infants. May inventory and requisition supplies. May provide medical treatment and personal care to patients in private home settings and be designated Home Health Nurse, Licensed Practical (medical ser.). *GOE: 10.02.01 STRENGTH: M GED: R4 M3 L4 SVP: 6 DLU: 87*

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

contemplates a hospital or institution setting with day-to-day longer term care.

In his May 24, 2004, letter to Plaintiff's counsel explaining the denial of benefits upon review, Defendant's representative James Whitney described "own occupation" under the plan as follows:

> "A claimant's own occupation may be different (broader) than his or her own job with a specific employer. Consequently, unless the claimant's occupation with a particular employer is unique, the claimant may not be able to perform his or her own job but may be able to perform his or her own occupation. If a claimant is unable to perform his or her own job with a specific employer because of unusual requirements of that job, the claimant may not be considered disabled if he or she could perform the typical industry requirements of that occupation."

(AR 255-56.)

Plaintiff contends that since her employer job description included "lifting objects to 60 pounds occasionally," she should be considered to be working at a "medium" level, and thus unable to perform her "own occupation." (See AR 267.) She also relies on the Johnson Report, which concluded her specific job required medium to heavy tasks. The Johnson Report is based on Plaintiff's description of her job duties. In response, Defendant asserts that this physical requirement is not a "material duty" as defined by the LTD plan. This interpretation is based on the Rainier research which found a LPN working in an office setting occasionally lifts or carries up to 20 pounds, in which case a cart can be used. (AR 297.) The research also indicated that, typically, when a patient falls or faints in the office, he is assisted by more than one person. (*Id.*) Further, as noted by Mr. Whitney, even if Plaintiff cannot perform the specific job of her

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

employer because of <u>unusual</u> requirements of the job (such as
lifting over 20 pounds or working in excess of 40 hours), she is
not considered disabled if she can perform typical requirements of
the job. (AR 255.)

The record in its entirety shows that the Defendant's
interpretation of the LTD plan is reasonable. *See Boyd*, 410 F.3d
at 1179 (entire record considered in determining abuse of
discretion). The plan definition of "own occupation" contemplates
the general duties Plaintiff was performing when she ceased
working (i.e. the "material duties" of her regular employment with
Spokane Cardiology). Material duties are those "generally
required" by similar employers in a particular occupation.
Defendant contracted a market study of other doctors' offices in
the Spokane area. (AR 297-303.) Using the research results as a
basis for "typical requirement," Defendant reasonably concluded
that lifting 60 pounds was not generally required. It was also
reasonable to determine that a person certified as a LPN does not
always perform the job duties listed under the *DICOT* job title of
"LPN." In fact, the *DICOT* includes several nurse occupations at
different strength levels that require LPN or RN certification.
(For example, a Head Nurse requires "medium" level, a Nurse
Supervisor requires "light" level, and a Nurse Consultant requires
"sedentary" level.) For this reason, Defendant reasonably
considered the relevant job duties, not just the job title or the
professional designation, in determining "own occupation" strength
requirements.

Abuse of discretion does not arise simply because there is
some evidence that would support an opposite decision. *Taft,* 9

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

F.3d at 1474.   Unless a plan administrator's interpretation is
totally without basis, and/or made in bad faith, the court should
defer to that interpretation.  *Jordan*, 370 F.3d at 875.  Here,
there is sufficient, dependable evidence to support Defendant's
interpretation.   Except for the listed physical demand of lifting
60 pounds occasionally, the Spokane Cardiology job description is
more similar to the Office Nurse definition than the LPN
definition.   Plaintiff clearly worked in an office setting and not
a hospital or institution.   Based on the survey of other doctor
offices, Defendant's determination that lifting 60 pounds was not
a typical requirement was not arbitrary.   "RN/LPN" listed on the
job description along with a list of job duties is reasonably
interpreted as a certification requirement, rather than a job
title.   In that regard, it is noted that Plaintiff refers to
herself as a "LPN-staff nurse" on her Employee's Statement (AR
103.)   Further, the Defendant reviewed the claim four times,
considered a report from Plaintiff's vocational expert (who
concurred that a LPN working in an office typically does "light"
work), hired an independent market research firm, and submitted
the claim to an independent physician consultant before final
denial.[4]   The record indicates that Defendant conducted a

---

[4] In her reply, Plaintiff argues that Defendant's initial denial without
obtaining the reports considered at the appeal level was arbitrary and
capricious, as it was based only on the case manager's "subjective" analysis
that Plaintiff's own occupation was Office Nurse.  (Ct. Rec. 27, p. 7-8 ).
This argument is without merit.  First, the parties agree that the plan
administrator has the authority to interpret the terms of the policy and
determine who is eligible based on that interpretation.  The initial denial was
made by the plan administrator's medical and vocational case managers.  Second,
the purpose of the appeal process is to allow the insurer to take a closer look
at a claim if requested by the claimant.  If all initial denials were
considered arbitrary and capricious simply because the insurer was exercising
its right to interpret the language, that authority would be meaningless.
Further, until a member appeals a decision, it is impossible to know what
aspect of its decision needs additional review.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

comprehensive review of Plaintiff's case and communicated with her in a complete and timely manner.    The scope of review and numerous letters of explanation demonstrate good faith.  (AR 256, 313, 317-19, 341-49.)

**CONCLUSION**

Defendant's determination that Plaintiff is not disabled from her "own occupation" of Office Nurse, a "light" level occupation, is based on a reasonable interpretation of the LTD Plan language, the findings of the Rainier market analysis, consideration of Plaintiff's vocational expert report, a comparison of *DICOT* definitions with the job description provided by employer Spokane Cardiology, and at least two independent reviews.  In ERISA cases, the standard of review is highly deferential.  Based on the evidence in the record, Defendant's denial of benefits was not an abuse of discretion.  Accordingly**,**

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 16**) is
**DENIED.**

2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 10**) is
**GRANTED.**

3.    Judgment for the Defendant shall be entered.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

4.    The Court Executive is directed to enter this order,

forward copies of the order to counsel, and shall close

the file.

**DATED** this 7th day of November, 2005.


                              s/ Alan A. McDonald
                         ALAN A.   McDONALD
                    SENIOR UNITED STATES DISTRICT JUDGE

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13